IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ANTHONY WILSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No: 2:23-cv-2278-JTF-tmp |
| ) | |
| WHISPERING OAKS CONDOMINIUM ) | |
| ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Whispering Oaks Condominium Association's ("Defendant") Motion for Summary Judgment filed on July 31, 2024. (ECF No. 47.) Defendant amended the Motion on August 1, 2024 (ECF No. 48.) Plaintiff Anthony Wilson ("Plaintiff") failed to Respond. LR 56.1(b). The Court Ordered Plaintiff to show cause why Defendant's Motion should not be granted, or to otherwise Respond by October 31, 2024. (ECF No. 54.) Plaintiff Responded to Defendant's Motion on October 30. 2024, but failed to dispute any of Defendant's facts.[1] (ECF No. 57.) For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.   FACTUAL BACKGROUND**

In 2022, Defendant entered into a contract with Memphis Communications Corporation ("MCC") to install a camera system on its property. (47-5 at 2 ¶ 3.) MCC placed a large order for

---

[1] Because Plaintiff did not respond to Defendant's Statement of Undisputed Issues of Material Fact, the following facts from ECF No. 47-5 are deemed admitted for the purposes of this Motion. (*See* LR 56.1(d); Fed. R. Civ. P. 56(e)(2).)

conduits, cameras, and other materials, which were delivered to Defendant's property on May 9, 2022. MCC was given access to a storage shed to store equipment and tools. (*Id.* at ¶ 4.) At the start of the project, several miscellaneous items were already located in the shed, including a mirror measuring 36" x 40", a golf cart, a refrigerator, and general clutter. (*Id.* at ¶ 7, 11.) According to Defendant's property manager Lee Henry, prior to MCC's access to the shed, the mirror was sitting on the floor leaning against the wall. (*Id.* at 3 ¶ 9.)

As noted, Defendant provided Ryan Creekmore, MCC's on-site supervisor for this project, a key and access to the shed where project equipment and tools were stored. (*Id.* at ¶ 4.) Creekmore was the only MCC person with a key, and the shed was to remain locked during non-work hours. (*Id.* at 2–4 ¶¶ 5, 8.) According to Creekmore, six MCC people worked on the project, all of whom gained daily and frequent access to the shed to retrieve materials. (*Id.* at ¶¶ 14, 16.) At no point during the month or so that the MCC workers were on the property did Creekmore or any other MCC employee complain to Henry about the mirror or other shed contents being unsafe. (*Id.* at ¶ 10.)

A few days before the incident, Plaintiff took materials from the shed to the laundry room area where he would be working for the next three days. (*Id.* at 4–5 ¶ 17.) Plaintiff worked on the laundry room project from Wednesday through Friday, the day of the incident. (*Id.* at 5 ¶ 18.) He then accessed the shed only once to return the ladder. (*Id.*)

On Friday, May 27, 2022, the day of the incident, Whispering Oaks closed at 3:00 p.m. due to the Memorial Day weekend. (*Id.* at 6 ¶ 28.) Henry told MCC and Creekmore, that they were not to work on the property at any time when the office was closed. (*Id.*) However, Creekmore arrived at the property between 8:00 a.m. and 9 a.m. that day and did not leave until after 5:00 p.m. (*Id.* at 6 ¶ 29.) Creekmore and Plaintiff were the last to leave. (*Id.*) Around 4:15 p.m., Plaintiff finished

2

the project for the day and was bringing the excess material and ladders back to the storage shed. (*Id.* at 7 ¶ 32.) Inside the shed, the golf cart took up half the space and a MCC ladder was obstructing the entrance to the shed. (*Id.* at 7 ¶¶ 33, 35.) Plaintiff opened the right door of the shed and attempted to move the ladder that was leaning against the mirror. (*Id.* at ¶ 34) Plaintiff pulled the ladder away from the wall, unaware that it was leaning against the mirror. (*Id.* at 7–8 ¶¶ 34–35.) Upon doing so, the mirror fell on Plaintiff, hitting him and cutting his right arm. (*Id.*)

At the time of the accident, Plaintiff had been working on Defendant's property for over three weeks. (*Id.* at 5 ¶ 19.) Plaintiff testified that he could not remember whether he had seen the mirror prior to the incident and did not know how the mirror was hung on the wall, who hung it, or for how long it had been hung. (*Id.* at 5, 10 ¶ 20–21, 48–49.) Creekmore, who was on-site almost daily, claimed that he had seen the mirror on the wall without the ladder in front of it at various times. (*Id.* at 5–6 ¶ 22–24, 27.) He testified that the mirror was hung by mirror clips or possibly glued on the wall and that it was in one piece as it hung on the wall, with the mirror side facing outwards. (*Id.*) On the way to the hospital, Plaintiff informed Creekmore that "the guys [working for his company] leaned [the ladder] on a mirror or did something to cover the mirror." (*Id.* at 6 ¶ 25.) Following his injury, Plaintiff filed a worker's compensation claim with his employer, Top Prospect. (*Id.* at 9 ¶ 43.)

## II.   LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the facts in the record and reasonable inferences that can be drawn

3

from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once a properly supported motion for summary judgment has been filed, the party opposing summary judgment must show that there is a genuine dispute of material fact by citing to evidence in the record. Fed. R. Civ. P. 56 (a), (c)(1). "When confronted with a properly supported Motion for Summary Judgment, the party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The opposing party "cannot rest solely on the allegations made in [his] pleadings." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009) (quoting *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002)).

A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's role is not to weigh evidence or assess the credibility of witnesses, but simply to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 623 (6th Cir. 2014) (quoting *Anderson*, 477 U.S. at 251–52). In a negligence claim, summary judgment is appropriate only when the inferences which may be drawn from the uncontroverted facts are so certain that all reasonable persons must agree on them. *Albers v. Walgreen Co.*, No. 04-2462, 2005 WL 2600215, *2 (W.D. Tenn. Oct. 11, 2005).

### III.   ANALYSIS

Defendant moves for summary judgment, arguing that there is no genuine issue of material fact and Plaintiff has failed to make out a prima facie case for premises liability negligence.[2] After viewing the evidence in the light most favorable to the Plaintiff, as the law requires, the Court finds that Plaintiff has failed to establish a prima facie case for premises liability negligence, and Defendant is entitled to judgment as a matter of law.

#### A.  Premises liability in Tennessee[3]

Generally, a plaintiff is entitled to recover damages for an injury that was legally caused by the negligent conduct of another. Thus, a plaintiff must prove negligence by showing: 1) the defendant owed the plaintiff a duty of care; 2) the defendant breached that duty; 3) proximate causation; and 4) damages. *McClenahan v. Cooley*, 806 S.W.2d 767, 774 (Tenn. 1991). In the premises liability context, a premises owner has the duty "to exercise reasonable care to its business invitees to make the premises safe." *Kenning v. HCA Health Servs. of Tenn., Inc.*, 1999 WL 1206697, *4 (Tenn. Ct. App. 1999) (internal citations omitted). "In order for an owner or operator of premises to be held liable for negligence in allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident." *Id.; See also Seymour v. LQ Management, LLC*, No. 3:16-cv-03039, 2018 WL 6341703, at *3 (M.D. Tenn. Dec. 5, 2018). Constructive notice can be

---

[2] For purposes of ruling on Defendant's Motion, the Court takes as true the above factual allegations as reported by Defendant; Plaintiff did not rebut or otherwise dispute Defendant's factual submission.

[3] The Court has diversity jurisdiction under 28 U.S.C. § 1332. State substantive law applies to state law claims brought in federal court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 (1938).

established by a plaintiff showing that the defendant knew or should have known of the dangerous condition or by showing a pattern of conduct, or a continuing condition indicating the existence of a dangerous condition. *Blair*, 130 S.W.3d at 764–66. Even so, premises owners are not absolute insurers of their patrons' safety. *Id.* at 764.

Defendant argues that Plaintiff failed to offer any evidence to show that Defendant or any of its agents had actual or constructive notice of any dangerous or defective condition relative to the mirror in the storage shed. (ECF No. 48, 1.) In support of its position, Defendant relies primarily on three cases: *Patterson v. Walmart Stores East, LP*, No. 20150023COAR3CV, 2015 WL 7720378 (Tenn. Ct. App. Nov. 30, 2015) (affirming trial court's grant of summary judgment to the defendant, finding that plaintiff offered no evidence to show how long the liquid she slipped on had been on the floor or any other evidence regarding how the liquid came to be on the floor); *Oldham v. Walmart Stores E., LP*, No. 2:18-cv-2703-JPM-cgc, 2019 WL 4061696 (W.D. Tenn. July 2, 2009) (same); and *Craig ex rel. Bridgeman v. United States*, No. 07-2149-STA, 2008 WL 4206729 (W.D. Tenn. Sept. 11, 2008). The Court notes that *Patterson* and *Oldham* are slip and fall cases where injuries occurred in public spaces and plaintiffs could not satisfy notice requirements.

In *Craig*, a patient at the Veterans Administration Hospital ("VA") filed a premises liability action against the United States for injuries sustained when he reached for a safety grab bar in his restroom. *Id.* at *1. In support of its summary judgment motion, the Government submitted the affidavit of a nurse manager at the VA who stated that she inspected the restroom and grab bar several days before plaintiff fell. In granting the Government's motion, the court found that the plaintiff failed to carry its burden to establish that the Government had either actual or constructive notice of a dangerous or unsafe condition. The court indicated that the plaintiff failed to come

6

forward with evidence to show that defendant caused or created the dangerous condition, how long the dangerous condition existed, or how it came into existence. *Id.* at *3–4. Thus, summary judgment was appropriate.

In the case at hand, Plaintiff's theory appears to be that Defendant had actual notice under Tennessee law because the mirror was allegedly mounted by one of Defendant's employees. (ECF No. 57, 2–3.) However, similar to *Craig,* Plaintiff failed to cite anything in the record to support his theory. The undisputed evidence in the record shows that the last time Defendant's property manager Lee Henry saw the mirror, it was sitting on the shed floor leaning against the wall. (ECF No. 47-5, 3 ¶ 9.) Henry stated in his affidavit that none of the individuals working on the camera installation ever said anything about the mirror or any dangers it posed during the month that MCC had access to the shed (ECF No. 47-6, 2 ¶ 9.) Actually, despite being on the property for over three weeks, Plaintiff could not remember whether he had seen the mirror prior to the incident that day, did not know how the mirror was hung, whether it was broken before the incident, or how long the mirror had been hung on the wall. (ECF No. 47-5, 5, 10 ¶ 20–21, 40, 48–49.) But Plaintiff knew that MCC employees leaned a ladder on the mirror prior to the incident. (*Id.* at 6 ¶ 25.)

Plaintiff failed to submit any evidence raising a triable factual issue regarding the existence of a dangerous or unsafe condition, much less whether it was created by Defendant, or whether Defendant had any prior notice of its existence. Further there are no facts showing any pattern of conduct, a recurring incident, or a general or continuing condition indicating the existence of a dangerous condition. As in *Craig*, Plaintiff has failed to carry his burden to prove that Defendant had been put on notice of an unsafe condition. Thus, Plaintiff has failed to make out a prima facie case for premises liability negligence.

### B. Res ipsa loquitur

Alternatively, Plaintiff seeks to rely on the doctrine of res ipsa loquitur, which permits a fact finder to infer negligence from the circumstances surrounding the injury; specifically that a breach of duty and causation-in-fact are satisfied even without direct evidence. *Burton v. Warren Farmers Co-op.*, 129 S.W.3d 513, 526 (Tenn. Ct. App. 2002). Plaintiff argues that res ipsa loquitur applies because the question of whether the mirror was improperly hung is question of fact for the jury. (ECF No. 57, 3–4.) However, Plaintiff's argument fails because he has not established that the instrumentality of harm—the mirror—was under the exclusive control of Defendant. *See Hawkins v. Opryland, U.S.A., Inc.*, No. 01A01-9309-CV-00408, 1994 WL 323092, at *3 (Tenn. Ct. App. July 8, 1994) (reversing trial court's denial of summary judgment and finding res ipsa loquitur inapplicable because instrumentality causing harm was not under the exclusive control of defendant); *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860 (Tenn. Ct. App. July 27, 2001) (same); *see also Beckner v. American Asbestos Control Co.*, 51 F'Appx. 164, 166 (6th Cir. 2002) ("[I]f two or more persons acting independently are responsible for the event causing the injury, then the doctrine of res ipsa loquitur does not apply.").

Here, Ryan Creekmore, Plaintiff's supervisor on this job, testified that he had the key to the storage shed where the mirror was located, that the MCC team had access to the shed, and that it was being used to store MCC supplies. (ECF No. 47-5, 2–3 ¶ 5, 8, 11.) At the time when MCC was on the property, no one from Whispering Oaks used the shed because it was cluttered with MCC's materials. (*Id.* at 3 ¶ 11.) Given the evidence showing that MCC employees frequently accessed and used the shed where the mirror was stored and the incident occurred, Plaintiff has not established that the instrumentality causing the injury was under Defendant's exclusive control. Thus, Plaintiff is unable to support his reliance on res ipsa loquitur.

### C. Comparative Fault

Plaintiff raises the issue of comparative fault, appearing to suggest that summary judgment is not appropriate because fault is a factual question for the trier of fact. (ECF No. 57, 4–5.) Tennessee follows the comparative fault system as a way of apportioning damages relative to the amount of fault attributed to each party. *Fenney v. Wal-Mart Stores East, LP*, 441 F.Supp.3d 635, 642–43 (W.D. Tenn. Jan. 3, 2020) (quoting *Lewis v. State*, 73 S.W.3d 88, 99 (Tenn. Ct. App. 2001)).

As noted above, Plaintiff has failed to carry his initial burden to make out a prima facie case for premises liability negligence against the Defendant. Since there are no facts showing that Defendant is liable under premises liability theory of negligence, there is no issue of comparative fault for the fact finder. *See Vaughn v. DMC-Memphis, LLC*, *12 (Tenn. Ct. App. Jan. 27, 2021) ("[Q]uestion of comparative fault only becomes relevant once duty is found.")

## IV.   CONCLUSION

In light of Plaintiff's failure to make out a prima facie case under a premises liability theory of negligence, Defendant is entitled to summary judgment. Therefore, Defendant's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED** this 14th day of November, 2024.

*s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE